# IN THE SUPREME COURT, STATE OF WYOMING

## 2019 WY 123

OCTOBER TERM, A.D. 2019

December 9, 2019

MELINDA CAROL CONZELMAN,

Appellant
(Defendant),

v.

S-19-0045

STEVEN RAY CONZELMAN,

Appellee
(Plaintiff).

*Appeal from the District Court of Campbell County*
*The Honorable John R. Perry, Judge*

*Representing Appellant:*
    Bernard Q. Phelan, Phelan Law Office, Cheyenne, Wyoming.

*Representing Appellee:*
    Kathryn J. Edelman, Edelman Law Office, Gillette, Wyoming.

*Before DAVIS, C.J., and FOX, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**GRAY, Justice.**

[¶1]    Melinda and Steven Conzelman married in 2015 and filed for divorce two years later.  In bifurcated proceedings, the district court entered a Decree of Divorce and later ordered the division of the marital property with each party essentially receiving their premarital assets.  Ms. Conzelman, the Appellant, contends the district court abused its discretion when it denied her second motion for a continuance of the trial.  She also claims the property division improperly punishes her for fault.[1]  We affirm.

### ISSUES

1.  Did the district court abuse its discretion when it denied Ms. Conzelman's motion for a continuance of the divorce trial?

2.  Did the district court improperly consider fault in making a division of property?

### FACTS

[¶2]    Steven Conzelman and Melinda Conzelman met in 2014 through an online dating website.  Both parties had been previously married—Mr. Conzelman once, and Ms. Conzelman four times.  Both parties had grown children, and both had separately acquired assets.  When they met, Ms. Conzelman lived in Florida, and Mr. Conzelman lived in Gillette, Wyoming.  As their relationship progressed, Ms. Conzelman relocated to Wyoming.  Mr. Conzelman paid for her moving expenses ($4000), debt on her vehicle ($3400), and to resolve her outstanding legal issues ($6000).

[¶3]    The parties married on March 5, 2015.  The relationship quickly turned rocky, and on May 1, 2017, Ms. Conzelman petitioned in circuit court for an order of protection against Mr. Conzelman, claiming physical abuse.  Two days after Ms. Conzelman filed for the protection order, Mr. Conzelman filed for divorce in district court.  On May 11, 2017, the circuit court granted Ms. Conzelman a protection order and directed Mr. Conzelman to pay Ms. Conzelman $3000 monthly spousal support through May 11, 2018.  It also ordered Mr. Conzelman to provide Ms. Conzelman an insurance card

---

[1] Ms. Conzelman raised a third issue: that the district court exceeded its equitable authority when it ordered the inventory of property at the parties' storage facility and directed the storage unit owner to change the entry code, effectively denying Ms. Conzelman access to the shed.  Ms. Conzelman cites no legal authority for her proposition that an order commanding affirmative action by a third party is beyond the power of the district court.  This Court may refuse to consider claims not supported by cogent argument and pertinent legal authority.  *Burnett v. Burnett*, 2017 WY 57, ¶ 7, 394 P.3d 480, 482 (Wyo. 2017) (citations omitted).  We do not address this issue.

allowing her to continue receiving benefits under his existing coverage. In July 2017, the circuit court lowered Mr. Conzelman's spousal support payments to $1800 a month due to Mr. Conzelman's changed employment status and ordered an additional $200 per month from the parties' joint rental income be paid to Ms. Conzelman.

[¶4]    The divorce trial was set for October 6, 2017. The district court issued its case management order on June 13, 2017, establishing deadlines for the designation of witnesses and identification of exhibits. Ms. Conzelman hired an attorney and filed her answer and counterclaim on May 31, 2017, claiming to be the aggrieved party. Shortly thereafter, her attorney died. Ms. Conzelman found another attorney and that attorney entered an appearance on July 6, 2017.

[¶5]    Both parties actively participated in the pretrial proceedings. Mr. Conzelman was granted occupation of the marital home beginning on June 27, 2017. In July 2017, Ms. Conzelman filed a *Motion for Order for Financial Affidavits and Motion for Appraisal of the Marital Residence* which the district court set for a hearing. In August, Ms. Conzelman's request for a continuance of the trial to April 16, 2018, was granted. In September, Ms. Conzelman's second attorney moved to withdraw, and the court granted that request in November 2017. Ms. Conzelman found a third lawyer who entered an appearance on March 28, 2018. Ms. Conzelman asked for another continuance on the same day. The district court denied the request.

[¶6]    A three-day bench trial began April 16, 2018.[2] Ms. Conzelman was not allowed to call witnesses because she did not timely file a witness and exhibit list pursuant to the case management order. The district court did allow her to testify, cross-examine Mr. Conzelman's witnesses, and offer exhibits. After the second day of trial, the court bifurcated the proceedings. It entered a Decree of Divorce on May 14, 2018, and reserved the property division pending the final day of trial.

[¶7]    Over three days of trial, Mr. Conzelman presented evidence that on many occasions Ms. Conzelman had threatened to report him to the police for abuse, when no such abuse had occurred. ("[She told me] [i]f I didn't leave she would have the cops come out there and have me arrested for assault even if she had to bruise herself to get it done.") He also presented evidence that Ms. Conzelman was in good health and able to work, frequently assisting with physically demanding farm chores and cleaning neighbors' houses. He claimed that she had paired her electronic devices to his cell phone and sent manipulative and malicious text messages to others in his name. Mr. Conzelman testified that Ms. Conzelman took possession of property belonging to him, including his firearms, tools, furniture, clothes, family photos, presents for his

---

[2] The parties were unable to resolve the matter on April 16, 2018, and the court held additional days of trial on May 11 and July 10, 2018.

grandchildren, and light switch covers and fixtures from the marital home. She sold some of these items and stored others.

[¶8] In contrast, Ms. Conzelman testified that on one occasion, Mr. Conzelman pushed her, aggravating a preexisting neck condition. She testified that she suffered severe pain and post-traumatic stress disorder "from the abuse." Ms. Conzelman claimed that she could not work. A physical injury interfered with her ability to fulfill the duties of a housecleaner and her ability to help with livestock and ranch maintenance. Ms. Conzelman testified that through her ranch management efforts, the value of the pasture land and the marital home increased by at least $60,000 in the two years preceding the parties' separation. She admitted that she sold Mr. Conzelman's guns but claimed she had done so on the advice of her second attorney and because she needed the money as she was without transportation, medication, or means to survive. It was her position she was entitled to an evenly balanced property division to include a $50,000 "equalization payment."

[¶9] On September 17, 2018, the district court issued a decision letter with detailed findings, and on September 28, 2018, entered an order awarding each party their premarital property. Ms. Conzelman also received a four-wheeler and several dogs she hoped to breed. Ms. Conzelman timely appealed the property division order.

## DISCUSSION

I.  **Did the district court abuse its discretion when it denied Ms. Conzelman's motion for a continuance of the divorce trial?**

[¶10] Ms. Conzelman argues that the death of her original attorney in June 2017 constituted "good cause" for a continuance of the divorce trial, and the district court abused its discretion in denying her March 2018 request. Ms. Conzelman claims that the denial of the continuance violated her due process rights and that the lack of a hearing on her motion resulted in prejudice.

[¶11] We have frequently addressed the issue of a continuance after a party replaces their counsel or after an attorney withdraws. "[I]n civil cases, withdrawal of counsel does not always provide grounds for the granting of a continuance." *Byrd v. Mahaffey*, 2003 WY 137, ¶ 6, 78 P.3d 671, 673 (Wyo. 2003) (citations omitted). Even if a party requests a continuance based on the withdrawal of counsel, "[a] party moving for a continuance must show good cause for doing so." *Shanor v. Eng'g, Inc. of Wyo.*, 705 P.2d 858, 861 (Wyo. 1985). Ms. Conzelman's first issue is a threshold matter "because if [she] was entitled to more time and opportunity to prepare for the [divorce trial], then it might be necessary to reverse the district court's dispositive order." *Wunsch v. Pickering*, 2008 WY 131, ¶ 15, 195 P.3d 1032, 1038 (Wyo. 2008). To reiterate the long-standing rule:

The trial court has broad discretion in granting or denying a motion for continuance, and absent a manifest abuse of discretion, the reviewing court will not disturb such a ruling. To find an abuse of discretion, the refusal must be so arbitrary as to deny appellant due process, and the burden rests upon appellant to prove actual prejudice and a violation of his rights. Upon review, we look at the peculiar circumstances of the case and the reasons presented to the trial judge at the time of the request.

*Id.* ¶ 15, 195 P.3d at 1039 (quoting *Richard v. Richard*, 2007 WY 180, ¶ 6, 170 P.3d 612, 614 (Wyo. 2007)); *see also* Wyo. Stat. Ann. § 1-9-102 (LexisNexis 2019) ("Any court, for good cause shown[,] may continue any action at any stage of the proceedings at the cost of the applicant, to be paid as the court shall direct."); U.R.D.C. Rule 201 ("Continuances will be granted only for good cause shown in writing.").

[¶12] Although Ms. Conzelman's motion for continuance was decided without a hearing,[3] we have reviewed the record of the proceedings which preceded the district court's denial of that motion, and that record affords us a look at the peculiar circumstances of the case. *See Wunsch*, ¶ 15, 195 P.3d at 1039. When Ms. Conzelman asked for her second continuance, Mr. Conzelman had filed pretrial disclosures and subpoenas to witnesses had issued; nearly ten months had passed since the death of Ms. Conzelman's first attorney; and more than five months had passed since her second attorney withdrew.[4]

[¶13] The district court has broad authority to control the course of litigation, *Vaughn v. State*, 962 P.2d 149, 152 (Wyo. 1998). A "continuance may be denied by the trial court if the need for the continuance is caused by the movant." *Byrd*, ¶ 26, 78 P.3d at 678 (quoting *Inskeep v. Inskeep*, 752 P.2d 434, 437 (Wyo. 1988)). As we noted in *Shanor*, "it is unfortunate that appellant did not contact his counsel sooner; nevertheless, a continuance is not to be granted based upon the mere inconvenience of counsel. Appellant's dilatory tactics ought not be rewarded." *Shanor*, 705 P.2d at 861; *see also Cates v. Eddy*, 669 P.2d 912, 916 (Wyo. 1983) (upholding denial of continuance and citing factors of fault of movant as well as length of time the matter had been before trial court when trial had been pending for one year).

---

[3] The district court was not bound to hold a hearing on Ms. Conzelman's motion for continuance, nor did Ms. Conzelman request one. W.R.C.P. 6(c)(4).

[4] The death of Ms. Conzelman's original attorney was not a factor in her March 2018 request for a continuance.

[¶14]  We cannot say that the district court's decision was "so arbitrary as to deny" Ms. Conzelman due process.  *Wunsch*, ¶ 15, 195 P.3d at 1039 (quoting *Richard*, ¶ 6, 170 P.3d at 614).

## II.  *Did the district court improperly consider fault in making a division of property?*

### A.  Standard of Review

[¶15]  We review a division of property for abuse of discretion:

> The disposition of marital property and decisions concerning alimony are committed to the sound discretion of the district court.  *Kamm [v. Kamm]*, [2016 WY 8,] ¶ 3, 365 P.3d [779,] 780–81 [(Wyo. 2016)].  "Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means exercising sound judgment with regard to what is right under the circumstances and without doing so arbitrarily or capriciously."  *Id.* (citation omitted).  The fundamental question this Court must ask is whether the district court could reasonably conclude as it did.  *Id.*  We must consider whether there is any aspect of the ruling that is arbitrary or capricious.  *Id.*  "In accomplishing our review, we consider only the evidence in favor of the successful party, ignore the evidence of the unsuccessful party, and grant to the successful party every reasonable inference that can be drawn from the record."  *Id.*

*Porter v. Porter*, 2017 WY 77, ¶ 12, 397 P.3d 196, 198 (Wyo. 2017).  A property division will be set aside only when it "shocks the conscience of this court and appears to be so unfair and inequitable that reasonable people cannot abide it."  *Id.* ¶ 16, 397 P.3d at 199 (citation omitted).

### B.  Discussion

[¶16]  Ms. Conzelman claims that the district court abused its discretion by improperly punishing her in its property division.  She argues that while fault may be considered, the district court here used fault to punish her through a "parsimonious" and "inequitable" property division.

[¶17]  Wyo. Stat. Ann. § 20-2-114 provides a court may consider various factors when making a property division, including "the respective merits of the parties and the condition in which they will be left by the divorce, the party through whom the property was acquired[,] and the burdens imposed upon the property for the benefit of either party

and children." Wyo. Stat. Ann. § 20-2-114(a) (LexisNexis 2019). In making a property division, "[i]t is appropriate to identify the party through whom property was acquired and award it to that party regardless of whether that results in an equal division of marital assets." *Dane v. Dane*, 2016 WY 38, ¶ 30, 368 P.3d 914, 920 (Wyo. 2016). Moreover:

> The district court may also properly consider the short duration of a marriage as one measure of how the marriage affected any increase in the value of property brought to the marriage by one party. *See Williams* [*v. Williams*], [2016 WY 21,] ¶ 39, 368 P.3d [539,] 550 [(Wyo. 2016)] (five-year marriage). Furthermore, in evaluating the position in which the parties will be left after the divorce, it is necessary to consider not only to whom property will be awarded, but also who will be responsible for any debt relating to that property. *Id.* ¶ 40, 368 P.3d at 551; *see also Guy-Thomas* [*v. Thomas*], [2015 WY 35,] ¶ 17, 344 P.3d [782,] 787 [(Wyo. 2015)].

*Dane*, ¶ 31, 368 P.3d at 920.

[¶18] In its decision letter, the district court pointed out that Ms. Conzelman entered the marriage with few personal assets, stating that "[w]hen Defendant first moved to Gillette from Florida, she brought only some clothing and her vehicle, a 2002 Ford short-box pickup truck . . . ." It awarded Ms. Conzelman all of her premarital property, a four-wheeler, and income-producing dogs. The remainder of the assets were set over to Mr. Conzelman, who also assumed any debts. In addition, Mr. Conzelman was required to keep Ms. Conzelman as the irrevocable beneficiary of his retirement fund. The court also took into account that "[Ms. Conzelman] received $22,158 in spousal support through the circuit court order, and [Mr. Conzelman] bore the financial impact" of Ms. Conzelman's outstanding criminal charges in another state. The court noted that Mr. Conzelman had paid the $3400 outstanding balance on Ms. Conzelman's pickup truck. The court concluded that Ms. Conzelman "will be in no worse an economic condition after the divorce than she was before the marriage."

[¶19] The district court was troubled by Ms. Conzelman's actions, and detailed its concerns in its decision letter.[5] The district court found Ms. Conzelman "credible in

---

[5] The district court noted how Ms. Conzelman lied about the number of her previous marriages; lied about her out-of-state legal difficulties being resolved; drove a wedge between Mr. Conzelman and his daughter; paired her tablet to Mr. Conzelman's cellular telephone to monitor and intercept his text messages; used multiple Social Security numbers; misrepresented her medical situation to a church in order to receive a charitable donation; called law enforcement and made misleading assertions about abuse; sold items belonging to Mr. Conzelman's daughter and her children; and took nearly all of Mr. Conzelman's property when she left the marital residence.

virtually no respect" and that "nearly all of [her] testimony and her conduct over the past three years has been a calculated effort to mislead [Mr. Conzelman], [Mr. Conzelman's] friends, the parties' family and neighbors, law enforcement, the circuit court, and this court." It also found that:

> It is a rare occasion indeed when the fault of one of the parties weighs so heavily in the court's fashioning of a property division. But, it is an equally rare occasion when the court encounters a level of malevolence such as that the court perceived during the trial of this matter. The testimony of [Ms. Conzelman] herself was notable for her willful attempts to avoid direct answers to questions; instead she appeared to prevaricate in nearly every instance. The court would go so far as to say [Ms. Conzelman's] behavior leading up to and during this marriage was approaching criminality. To put it simply, the court believes she was a predator in this scenario. Nevertheless, the court must also consider and balance the economic condition in which the parties will be left after the divorce.

[¶20] "The trial court possesses a great amount of discretion in dividing marital property," which includes consideration of the fault of the parties. *Stevens v. Stevens*, 2014 WY 23, ¶ 10, 318 P.3d 802, 806 (Wyo. 2014) (citations omitted). "As our precedent plainly provides, a trial court may consider fault of the parties when dividing marital property, but may also refuse to do so, depending on the circumstances of the case." *Guy-Thomas*, ¶ 13, 344 P.3d at 786. "Although the trial court cannot divide the property in such a way that it would punish one of the parties, it may consider fault of the respective parties, together with all other facts and circumstances surrounding the dissolution of the marriage in dividing a couple's marital assets." *Stevens*, ¶ 10, 318 P.3d at 806 (quoting *Hall v. Hall*, 2002 WY 30, ¶ 14, 40 P.3d 1228, 1230 (Wyo. 2002)); *see also Grosskopf v. Grosskopf*, 677 P.2d 814, 819 (Wyo. 1984) ("fault has always been a consideration in adjusting the rights of the parties to a marriage being dissolved").

[¶21] In making a property division, a district court may consider the short length of the marriage, the respective positions of the parties, the merits of the parties, the existence of family violence during the marriage, the absence of children in common, and fault. Wyo. Stat. Ann. § 20-2-114; *Dane*, ¶ 31, 368 P.3d at 920. On review of the record, we conclude that the property division was not "so unfair and inequitable that it would shock the conscience of reasonable minds." *Id.* ¶ 30, 368 P.3d at 920.

7

## *CONCLUSION*

[¶22]  The district court did not abuse its discretion when it denied Ms. Conzelman's motion for a continuance of the divorce trial, and it did not improperly punish Ms. Conzelman for fault in dividing the marital property.

[¶23]  Affirmed.