# THE SUPREME COURT, STATE OF WYOMING

# 2022 WY 164

OCTOBER TERM, A.D. 2022

December 29, 2022

MERRITT ENGEBRETSEN,

Appellant
(Defendant),

v.

S-22-0100

LISA ENGEBRETSEN,

Appellee
(Plaintiff).

*Appeal from the District Court of Natrona County*
*The Honorable Catherine E. Wilking, Judge*

*Representing Appellant:*
　　Stacy M. Kirven of Kirven Law, LLC, Sheridan, WY.

*Representing Appellee:*
　　Mark E. Drury of Law Office of Mark E. Drury, Casper, WY.

*Before FOX, C.J., and KAUTZ, BOOMGAARDEN, FENN, JJ., and CAMPBELL, DJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FENN, Justice.**

[¶1]     Merritt Engebretsen (Husband) and Lisa Engebretsen (Wife) divorced after almost 17 years of marriage.  Husband contends the district court abused its discretion when it denied his motions to continue the bench trial.  He also appeals the district court's division of marital property, claiming it was error to award him real property that belonged to his parents and to order him to make an equalization payment to Wife.  We affirm.

## ISSUES

[¶2]     Husband presents two issues, which we rephrase as follows:

> I.     Did the district court abuse its discretion when it denied Husband's motions to continue the bench trial?
>
> II.    Did the district court abuse its discretion in its division of marital property and debts?

## FACTS

[¶3]     The parties were married on July 8, 2005.  Wife filed her complaint for divorce in January 2020, but the parties did not separate until March 2020.  The district court scheduled the bench trial for February 18, 2022.  On December 30, 2021, Husband's counsel filed a motion to withdraw and a motion to continue the bench trial.  Husband's counsel indicated he was retiring from the practice of law effective December 31, 2021, and he would no longer be able to practice law.  Husband's counsel represented he and Husband made diligent efforts to obtain substitute counsel, but these attempts were unsuccessful, so Husband needed more time to obtain substitute counsel.  Wife opposed the continuance.  She asserted Husband had not made any attempts to settle the case in the past two years, he did not meaningfully participate in mediation, he should have known about his attorney's retirement sooner, and she would be unduly and unreasonably burdened by any further delay.

[¶4]     The district court held a hearing on the motion to continue on February 2, 2022.  Although the record is unclear, it appears Husband represented himself at that hearing.  The district court orally denied the motion to continue, and it instructed Wife's counsel to prepare a written order denying the motion.  This order, which was not entered until after the bench trial, did not contain any rationale for the district court's decision to deny the motion.

[¶5]     After the district court orally denied Husband's motion to continue, he retained new counsel who entered an appearance on his behalf on February 9, 2022.  Husband's new attorney filed another motion to continue that same day.  This motion indicated the need

1

for a continuance was out of Husband's control because his former counsel's retirement was sudden and unexpected. The motion also indicated former counsel had not filed requests for discovery, pretrial disclosures, or expert witness designations. New counsel requested a continuance to allow review of discovery, designation of experts, and preparation and filing of necessary pleadings and disclosures. The motion also indicated Wife's counsel objected to the continuance. The district court denied this motion without a hearing. The order did not include any reason for denying the motion.

[¶6] The day before the trial was set to begin, Husband filed his pretrial disclosures under Rule 26(a)(3) of the Wyoming Rules of Civil Procedure. This pleading informed the district court that Husband's former counsel had not actually retired, but instead had been suspended from the practice of law effective January 5, 2022. When new counsel took over, she discovered there was an outstanding discovery issue, which she took steps to correct. However, pretrial disclosures could not be completed until she met with Husband to review the hundreds of pages of documents Wife produced in discovery. New counsel asked the district court to allow Husband to call witnesses and present exhibits that had not previously been disclosed.

[¶7] At the beginning of the trial, Wife's counsel objected to Husband calling any witnesses or presenting any exhibits that had not been timely disclosed. Husband's new counsel argued Husband was not to blame for his former counsel's conduct, and he would be prejudiced if he was not allowed to present evidence. Rather than completely prohibiting Husband from calling witnesses or presenting exhibits, the district court stated it would rule on each objection as it was made.

[¶8] The following evidence was presented at the trial. Shortly after the parties married, Wife went to work for the Casper Star Tribune as an advertising sales representative. Husband was working for James Cable. Wife left the Casper Star Tribune in 2010 and went to real estate school. Wife began working for Realty Executives in 2010. Husband left James Cable in 2012 and went to work for Century Link, where he worked for two years before going to work for Union Wireless.

[¶9] Wife was unexpectedly terminated from Realty Executives in January 2016. The parties decided to start a real estate business together. Both parties incurred debt to start the business. In addition, Wife used the money she had set aside for her 2015 taxes to pay the parties' living expenses and business expenses while the company was starting up. As a result, the IRS placed a tax lien for approximately $34,000 on the parties' home in 2017. The parties borrowed $50,000 from Husband's 401k to pay off that debt. The loan from Husband's 401k had not been fully repaid as of the date of separation. Wife believed there was approximately $30,000 remaining on this loan at that time.

[¶10] Wife testified that she and Husband worked around the clock for the first two weeks to get the real estate business up and running. Husband built the website and took care of

2

online advertising while she dealt with "the nuts and bolts of setting up the business." After those two weeks, Wife continued working 12–15 hours a day selling houses to pay Husband back for the debt he had incurred. Although the company paid for Husband to get a real estate license, he never sold a home or commercial property.

[¶11] The office manager for the parties' real estate company testified Wife worked as a real estate agent and property manager in addition to her duties as the owner of the company. The office manager also testified Husband would come into the office three-to-five days a week, and he would occasionally answer phones, help take rental payments, and show rental properties if no one else was available. Husband continued to work full-time for Union Wireless. Husband stopped coming into the real estate company's office approximately three months before Wife filed for divorce.

[¶12] Wife's business valuation expert opined the parties' real estate company had a value of $48,000 as of the date of separation. Husband did not agree with this valuation, but he did not offer an alternative valuation. From 2018–2020 the real estate company paid Husband approximately $120,000. Wife testified this money was to pay him back for the debts he incurred when starting the business and to compensate him for the work he did for the company. Husband claimed he did not know this $120,000 was paid to him, and he thought this money was the profits Wife "was able to get out of the business." During this same period, the company paid Wife close to $600,000.

[¶13] After the parties separated, Husband moved into a home on Williams Street in Evansville, Wyoming. Husband used the parties' real estate business to assist him with preparing the paperwork to purchase this property. Husband made the initial bid on the property in January or February of 2020. Wife presented some evidence that this property was originally going to be titled in Husband's name, but it was subsequently titled in his parents' names. The Williams Street property was purchased for $75,500 in cash, and there is no mortgage against that property. Husband testified his parents purchased this property as an investment, and they are allowing him to live in it while he fixes it up.

[¶14] Wife remained in the marital home after the separation. Wife's real estate valuation expert opined the marital home was worth between $300,000 and $310,000 as of the date of the separation. The mortgage on the marital home had a balance of approximately $245,000 at that time.

[¶15] At the time of the marriage, Husband's 401k had a balance of approximately $36,000. At the time of separation, Husband's 401k had a balance of approximately $142,000. Husband also had an employee stock ownership plan with his current employer, which he believed to be worth around $12,000.

[¶16] The district court issued written findings of fact, conclusions of law, and a decree of divorce. The district court awarded the marital home to Wife, subject to the mortgage

3

thereon. The district court awarded Husband "all right, title and interest, be it actual, contingent or anticipatory," in the Williams Street property. Wife received all "right, title and interest" in the parties' real estate company and all the associated business debts. Husband received his entire 401k. Wife was awarded a truck, subject to the indebtedness thereon, and Husband was awarded two vehicles, a camper, two motorcycles, and two ATVs, all of which were fully paid off. The district court also divided the martial debts between the parties. In addition to the mortgage and business debts, Wife was assigned $79,926 in additional debts. Husband was assigned debts totaling $54,277. Finally, the district court ordered Husband to pay Wife an equalization payment in the amount of $20,000. This appeal timely followed.

## DISCUSSION

### I. Did the district court abuse its discretion when it denied Husband's motions to continue the bench trial?

[¶17] Husband argues the district court abused its discretion and violated his constitutional right to due process when it denied his motions to continue the trial. He asserts the district court should have granted his motions because the reasons necessitating the continuance were beyond his control, and he was prejudiced by his former counsel's conduct. Wife asserts Husband is partly to blame for the events that necessitated the continuance because "Husband knew or should have known that his [former] attorney was not taking the necessary steps to prepare his case for trial," but Husband did not take steps to retain new counsel until two weeks before the bench trial.

[¶18] The district court has broad discretion to grant or deny a continuance, and we will not reverse absent a manifest abuse of discretion. *Conzelman v. Conzelman*, 2019 WY 123, ¶ 11, 453 P.3d 773, 777 (Wyo. 2019) (quoting *Wunsch v. Pickering*, 2008 WY 131, ¶ 15, 195 P.3d 1032, 1039 (Wyo. 2008)).

> To find an abuse of discretion, the refusal must be so arbitrary as to deny appellant due process, and the burden rests upon appellant to prove actual prejudice and a violation of his rights. Upon review, we look at **the peculiar circumstances of the case and the reasons presented to the trial judge at the time of the request**.

*Id.* (quoting *Wunsch*, ¶ 15, 195 P.3d at 1039) (emphasis added). Replacing counsel or the "withdrawal of counsel does not always provide grounds for the granting of a continuance." *Id.* (quoting *Byrd v. Mahaffey*, 2003 WY 137, ¶ 6, 78 P.3d 671, 673 (Wyo. 2003)). When "a party requests a continuance based on the withdrawal of counsel," that party "must show good cause for doing so." *Id.* (quoting *Shanor v. Eng'g, Inc. of Wyo.*, 705 P.2d 858, 861 (Wyo. 1985)). The district court may deny a motion for a continuance "if the need for the

continuance is caused by the movant." *Id.* at ¶ 13, 453 P.3d at 778 (quoting *Byrd*, ¶ 26, 78 P.3d at 678).

[¶19]   Our review of this issue is constrained because Husband did not provide a transcript of the hearing on the first motion to continue, nor did he obtain a statement of the evidence under Rule 3.03 of the Wyoming Rules of Appellate Procedure.  "We have cautioned that 'the appellant bears the responsibility of bringing forth a sufficient record for the Court's review.  When []he does not, we assume that the district court's orders and rulings were correct, and summarily affirm the district court's decision.'" *Rush v. Golkowski*, 2021 WY 27, ¶ 16, 480 P.3d 1174, 1178 (Wyo. 2021) (quoting *Rammell v. Mountainaire Animal Clinic, P.C.*, 2019 WY 53, ¶ 30, 442 P.3d 41, 49 (Wyo. 2019)).  "To the extent that we can assess the district court's exercise of discretion based on the limited record before us, we shall do so.  Otherwise, we will summarily affirm." *Id.*

[¶20]   Husband claims his former counsel "misrepresented to Husband the seriousness of the investigation he was under with regard to his ethical violations."  He further asserts former counsel "misled Husband by telling him that everything was going well in his case; the proper pleadings were being filed, discovery requests had been sent, discovery responses were provided, experts were being retained, etc."  In addition, he asserts former counsel "made constant representations" to Husband that he would be available for the bench trial, and former counsel "had arranged for another attorney to take over the case once he knew he was going to be suspended prior to trial."  However, that attorney was not available on the trial date, leaving Husband without counsel and a case that was not ready for trial.  The record indicates Husband did not provide complete information to the district court at the time his motions to continue were made.

[¶21]   Husband's first motion to continue indicated his counsel was retiring and would no longer be allowed to practice law, and he needed more time to find substitute counsel.  It did not mention former counsel's upcoming suspension, nor did it give any indication there were outstanding discovery issues or that experts had not been retained.  We do not know what additional facts were presented at the hearing on this motion, which took place more than one month after the first motion to continue was filed, nor do we know if the district court announced any specific reasons for denying that motion.  Because the record is insufficient to allow us to review the district court's exercise of discretion, we will summarily affirm its decision to deny the first motion to continue.

[¶22]   Husband's second motion was filed just over one week before the bench trial was set to begin.  At that time, the case had been pending for two years and Wife had already filed expert witness designations, pretrial disclosures, and subpoenaed witnesses.  Husband's second motion to continue did not indicate former counsel had been suspended, nor did it set forth any of the alleged misrepresentations former counsel had made to Husband concerning his suspension or the availability of substitute counsel.  Because Husband did not present these facts to the district court in his second motion to continue,

it had no facts before it from which it could conclude the need for the continuance was not caused by Husband.  The district court knew Wife objected to the continuance, and it could have reasonably concluded Wife would be prejudiced by delaying the trial.  Considering the reasons Husband actually presented to the district court in his second motion to continue, we cannot say the district court's decision to deny the second motion was "'so arbitrary as to deny' [Husband] due process." *Conzelman*, 2019 WY 123, ¶ 14, 453 P.3d at 778 (quoting *Wunsch*, 2008 WY 131, ¶ 15, 195 P.3d at 1039).

### II.     Did the district court abuse its discretion in its division of marital property and debts?

[¶23]   "Disposition of marital property is 'committed to the sound discretion of the district court.'" *Snyder v. Snyder*, 2021 WY 115, ¶ 7, 496 P.3d 1255, 1257 (Wyo. 2021) (quoting *Begley v. Begley*, 2020 WY 77, ¶ 20, 466 P.3d 276, 283 (Wyo. 2020)).  "We review the district court's property disposition for an abuse of discretion." *Morrison v. Rubio*, 2022 WY 26, ¶ 16, 504 P.3d 251, 255 (Wyo. 2022) (quoting *Innes v. Innes*, 2021 WY 137, ¶ 16, 500 P.3d 259, 262 (Wyo. 2021)).  "A court abuses its discretion when 'the property disposition shocks the conscience of this Court and appears to be so unfair and inequitable that reasonable people cannot abide it.'" *Id.* (quoting *Long v. Long*, 2018 WY 26, ¶ 22, 413 P.3d 117, 125 (Wyo. 2018)).  The record must show "clear grounds" for altering the property distribution because "the trial court is usually in a better position than the appellate court to judge the parties' needs and the merits of their positions." *Snyder*, ¶ 7, 496 P.3d at 1257 (quoting *Metz v. Metz*, 2003 WY 3, ¶ 6, 61 P.3d 383, 385 (Wyo. 2003)).

[¶24]   A district court's division of property in a divorce is governed by Wyoming Statute § 20-2-114(a) (LexisNexis 2021) which states:

> [I]n granting a divorce, the court shall make such disposition of the property of the parties as appears just and equitable, having regard for the respective merits of the parties and the condition in which they will be left by the divorce, the party through whom the property was acquired and the burdens imposed upon the property for the benefit of either party. . . .

"There are no specific guidelines as to the weight the district court must afford the statutory considerations when making a property division." *Morrison*, 2022 WY 26, ¶ 19, 504 P.3d at 256 (quoting *Innes*, 2021 WY 137, ¶ 15, 500 P.3d at 262).  This statute "does not require an equal division of property." *Id.* (quoting *Malli v. Malli*, 2020 WY 42, ¶ 16, 460 P.3d 245, 249 (Wyo. 2020)).  "[A] just and equitable division of property is just as likely not to be equal." *Id.* (quoting *Long*, 2018 WY 26, ¶ 22, 413 P.3d at 125).  We evaluate the equity of the district court's property division "from the perspective of the overall distribution rather than from a narrow focus on the effects of any particular distribution." *Id.* (quoting *Innes*, ¶ 17, 500 P.3d at 262).

6

[¶25] Husband alleges the district court lacked jurisdiction to award Husband the Williams Street property because it belonged to his parents. He also asserts the district court erred when it assigned the Williams Street Property a value of $150,000, thereby creating "a false net worth" for Husband. Finally, he argues the district court abused its discretion when it ordered him to make a $20,000 equalization payment to Wife. Wife asserts there is nothing in the record to support a claim the district court treated the Williams Street property as marital property subject to division. She argues the district court only considered the Williams Street property when analyzing the condition in which each party would be left after the divorce under Wyoming Statute § 20-2-114(a).

[¶26] After reviewing the record, it is apparent the district court did not improperly include the Williams Street property in its division of marital property. In its findings of fact, the district court noted Wife "will **have** a home worth $305,000.00 with sole responsibility for a $245,643.00 mortgage" while Husband "will be **living in** a home with an approximate value of $150,000.00 paid for in cash with no mortgage." This shows the district court was considering the condition in which the parties would be left after the divorce, as it was required to do under Wyoming Statute § 20-2-114(a).

[¶27] There was some evidence presented at trial that Husband might have some kind of interest in the Williams Street property. Wife presented evidence the property was originally going to be titled in Husband's name, but it was ultimately placed in his parents' names. Due to this evidence, the district court awarded Husband whatever "actual, contingent or anticipatory" interest he might have in the Williams Street property. The district court did not make any findings that Husband actually had an interest in the Williams Street property or that the value of that interest was $150,000. Based on the limited and conflicting evidence presented regarding the ownership and value of the Williams Street property, we do not find the district court abused its discretion by awarding Husband whatever interest the parties might have in the property. Because the district court never placed a value on this interest, we conclude the district court's property division did not provide a false net worth to Husband.

[¶28] When considering whether the district court abused its discretion in ordering Husband to make the equalization payment, we must look at the overall distribution. *Morrison*, 2022 WY 26, ¶ 19, 504 P.3d at 256 (quoting *Innes*, ¶ 17, 500 P.3d at 262). While Wife was awarded the marital home and the real estate business, she was also awarded a larger portion of the marital debt, and she has no retirement savings. Husband is leaving the marriage with significantly less debt than Wife, a free place to live, his entire 401(k), and several assets that are unencumbered by any debt. After considering the statutory factors and dividing the parties' assets and debts, the district court determined it was equitable to require Husband to make a $20,000 equalization payment to Wife. "The record demonstrates that the district court could reasonably conclude as it did, and its division of property[,] including the equalization payment[,] does not 'shock the

7

conscience of this court.'" *See Morrison*, 2022 WY 26, ¶ 30, 504 P.3d at 257 (citing *Begley*, 2020 WY 77, ¶ 20, 466 P.3d at 283).

## **CONCLUSION**

[¶29]   The district court did not abuse its discretion when it denied Husband's motions to continue the bench trial or in its disposition of the marital property.  We affirm.