# IN THE SUPREME COURT, STATE OF WYOMING

# 2024 WY 65

APRIL TERM, A.D. 2024

June 14, 2024

RANDALL THOMAS BAILEY,

Appellant
(Defendant),

v.

SARA ELIZABETH BAILEY,

Appellee
(Plaintiff).

S-23-0296

*Appeal from the District Court of Park County*
*The Honorable Bobbi Dean Overfield, Judge*

*Representing Appellant:*
Bethia D. Kalenak, Kalenak Law, Cody Wyoming.

*Representing Appellee:*
Alex H. Sitz III, Meinecke & Sitz, LLC. Cody, Wyoming.

*Before FOX, C.J., and \*KAUTZ, BOOMGAARDEN, GRAY, and FENN, JJ.*

*\* Justice Kautz retired from judicial office effective March 26, 2024, and, pursuant to Article 5, § 5 of the Wyoming Constitution and Wyo. Stat. Ann. § 5-1-106(f) (2023), he was reassigned to act on this matter on March 27, 2024.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**BOOMGAARDEN, Justice.**

[¶1]    Randall Thomas Bailey appeals the district court's custody determination, child support calculation, and division of property included in its September 2023 Divorce Decree (Decree).  Because the district court did not abuse its discretion in deciding these issues, we affirm.

### ISSUES

[¶2]    There are three primary issues in this appeal—whether the district court abused its discretion in (1) determining custody; (2) calculating child support; and (3) dividing the parties' property.  We also briefly address Ms. Larson's (formerly known as Ms. Bailey) assertion that Mr. Bailey violated our rules by not serving the guardian ad litem (GAL) in this appeal.

### FACTS

[¶3]    The parties married in 2005 and have three minor children.  Ms. Larson filed a complaint for divorce in December 2022.  The parties filed a stipulated request for a GAL, which the district court granted in March 2023.  A temporary custody hearing promptly occurred, and the court's temporary custody order set the children's residence and each parties' parenting time for the remainder of the school year and summer recess.[1]

[¶4]    In September 2023, following a two-day bench trial, the district court issued a Decision Letter that determined child custody and child support and divided the parties' property.  The court entered the Decree a few weeks later and expressly incorporated the Decision Letter's findings.  The Decree provided for joint legal custody, set the children's primary residence with Ms. Larson, and gave her final decision-making authority if the parents were unable to agree on certain issues.  The Decree set Father's parenting time as every other weekend during the school year and every other week during summer break.  During Father's parenting time, he could restrict the children's extracurricular activities so as to not interrupt or reduce his parenting time.  For child support, the court imputed income to Mr. Bailey, determined the presumptive child support he owed to Ms. Larson, and entered a slight downward deviation in that amount.  The court calculated the value of all marital property as approximately $2.2 million and divided that almost equally, with slightly more of the value going to Mr. Bailey.  Nevertheless, the division of property required an equalization payment of $475,000 from Mr. Bailey to Ms. Larson.

[¶5]    Mr. Bailey timely appealed the district court's order.  We incorporate additional facts from the Decree and trial testimony in our analysis as needed.

---

[1] The district court used the term "parenting time" instead of "visitation," and we apply the same language in this opinion.

# DISCUSSION

## I.    Custody

[¶6]    We review a district court's custody decision—"one of the most difficult and demanding tasks assigned to a trial judge"—for an abuse of discretion. *Mecartney v. Mecartney*, 2021 WY 141, ¶ 15, 501 P.3d 197, 202 (Wyo. 2021) (citations omitted); *Bruegman v. Bruegman*, 2018 WY 49, ¶ 11, 417 P.3d 157, 161 (Wyo. 2018) (quoting *Pace v. Pace*, 2001 WY 43, ¶ 11, 22 P.3d 861, 865 (Wyo. 2001)).  A court abuses its discretion if it acts in a manner that exceeds the bounds of reason under the circumstances, violates some legal principle, or ignores a material factor deserving significant weight. *Hyatt v. Hyatt*, 2023 WY 129, ¶ 48, 540 P.3d 873, 888 (Wyo. 2023) (quoting *Baer v. Baer*, 2022 WY 165, ¶ 18, 522 P.3d 628, 635 (Wyo. 2022)).  We evaluate the sufficiency of the evidence supporting the court's decision, and we afford the prevailing party every favorable inference while omitting consideration of evidence presented by the unsuccessful party. *Id.*; *Johnson v. Johnson*, 2020 WY 18, ¶ 10, 458 P.3d 27, 32 (Wyo. 2020) (citations omitted).  A court's findings of fact that are not supported by, contrary to, or against the great weight of the evidence cannot be sustained. *Hyatt*, 2023 WY 129, ¶ 48, 540 P.3d at 888.

[¶7]    The paramount consideration when awarding custody and parenting time is the best interests of the children. *Id.* at ¶ 49 (citing *Johnson*, 2020 WY 18, ¶ 12, 458 P.3d at 32). The district court must consider the following list of nonexclusive statutory factors to determine the best interests of the children:

> (i) The quality of the relationship each child has with each parent;
>
> (ii) The ability of each parent to provide adequate care for each child throughout each period of responsibility, including arranging for each child's care by others as needed;
>
> (iii) The relative competency and fitness of each parent;
>
> (iv) Each parent's willingness to accept all responsibilities of parenting, including a willingness to accept care for each child at specified times and to relinquish care to the other parent at specified times;
>
> (v) How the parents and each child can best maintain and strengthen a relationship with each other;

(vi) How the parents and each child interact and communicate with each other and how such interaction and communication may be improved;

(vii) The ability and willingness of each parent to allow the other to provide care without intrusion, respect the other parent's rights and responsibilities, including the right to privacy;

(viii) Geographic distance between the parents' residences;

(ix) The current physical and mental ability of each parent to care for each child;

(x) Any other factors the court deems necessary and relevant.

Wyo. Stat. Ann. § 20-2-201(a) (2023). The court must also consider the "weighty factor" of a parent's status as primary caregiver. *Martin v. Hart*, 2018 WY 123, ¶ 22, 423 P.3d 56, 64 (Wyo. 2018) (citations omitted); *Bruegman*, 2018 WY 49, ¶41, 417 P.3d at 170. No one factor controls the court's decision, and each case may require different weight be given to individual factors. *Hyatt*, 2023 WY 129, ¶ 49, 540 P.3d at 888 (citation omitted); *Sears v. Sears*, 2021 WY 20, ¶ 14, 479 P.3d 767, 772 (Wyo. 2021) (citation omitted).

[¶8]   Mr. Bailey requested a 50–50 shared custody arrangement at trial. The court ordered joint legal custody and week on–week off residential custody for summer vacation, but it declined to adopt a 50–50 residential custody arrangement during the school year. Mr. Bailey contests the court's conclusion by challenging its evaluation of certain statutory factors and primary caregiver responsibilities.

[¶9]   We first consider Mr. Bailey's assertion that the district court improperly concluded Ms. Larson was the primary caregiver. The court did not consider primary caregiver status as a separate factor but in conjunction with other statutory factors: the quality of the relationship the children have with each parent; the ability of each parent to provide care and arrange for alternate care; and the willingness to accept parenting responsibilities. The court found Ms. Larson was the primary caregiver for the three children during infancy and largely thereafter as the primary coordinator for the children's activities. It also noted that Mr. Bailey had difficulty acknowledging Ms. Larson's role as caregiver. Mr. Bailey asserts the court erred in its primary caregiver analysis by pointing to Ms. Larson's participation in Ironman triathlons, the extensive training required for that type of athletic event, and the hours each week she spent employed as a nurse. The parties' testimony about the time Ms. Larson spent training for athletic events differed. To support a finding that he was the primary caregiver, Mr. Bailey testified about his role related to breastfeeding during the children's infant years and after Ms. Larson recovered from an injury. The court heard

testimony from Ms. Larson about Father's work schedule, how for several years he worked in Billings, Montana and commuted home either on weekends or different times during the week, and a more recent period when Mr. Bailey lived in South Carolina to provide care for his mother.

[¶10]  Mr. Bailey invites us to reweigh the evidence about each parent's caregiver roles over the stages of the children's lives and any credibility determinations inherent to that evidence.  The standard of review does not permit us to do so.  *Hyatt*, 2023 WY 129, ¶ 48, 540 P.3d at 888.  Rather, we must afford Ms. Larson every favorable inference while omitting Mr. Bailey's evidence.  *Id.*  We acknowledge Mr. Bailey views the evidence differently, but we cannot conclude the district court's primary caregiver findings are unsupported by the evidence or exceed the bounds of reason.

[¶11]  Mr. Bailey also asserts the district court improperly weighed other factors.  For example, Mr. Bailey asserts Ms. Larson has a history of noncompliance with court orders and is unable to communicate with him, pointing to the coparenting class requirement in the temporary custody order.  Mr. Bailey testified at trial, and reiterates in this appeal, that Ms. Larson did not attend joint coparenting classes with him.  The record confirms that the court ordered coparenting classes; however, it did not require the parents to jointly attend.  The court directed the GAL to identify an appropriate class, including remote or online options.  The court also considered the parents' ongoing communication difficulties and affirmatively suggested in its Decision Letter that they might benefit from using a parenting app, text, or email.  Mr. Bailey has failed to show how the court abused its discretion in reaching these decisions.

[¶12]  As further evidence that Ms. Larson does not follow court orders or allow Mr. Bailey to parent without intrusion, Mr. Bailey points to disputes over changes in pick-up and drop-off times that Ms. Larson made to accommodate the children's extracurricular activities.  The district court expressly considered those disputes when crafting the Decree—it provided that Mr. Bailey could cancel extracurricular activities as necessary to allow him his full parenting time.  We will not reweigh the facts in Mr. Bailey's favor, and we find no abuse of discretion in how the court chose to accommodate Mr. Bailey's explicit concern about how the extracurricular activities interrupted his parenting time.  Mr. Bailey made the same assertions in a motion for an order to show cause.  It is clear from the record the court considered those allegations but found no violation of the court's order.

[¶13]  In addition, Mr. Bailey contests Ms. Larson's use of a protective order early in the divorce and presents it as intrusion on his parenting time.  Mr. Bailey misconstrues the record.  Ms. Larson sought a stalking protective order when Mr. Bailey placed a GPS tracker on her car after they separated.  Mr. Bailey violated that order on several occasions, and was once arrested and spent a night in jail.  The circuit court subsequently imposed a no contact order.  We cannot construe enforcement of the circuit court's orders as an intrusion on parenting time as Mr. Bailey requests.  The district court reasonably

4

considered the GPS tracker as an interference by Mr. Bailey with Ms. Larson's parenting time and her ability to parent without intrusion on her privacy.

[¶14] Mr. Bailey also contests the GAL's representations. He asserts that the GAL did not observe both parents during parenting time and the children did not testify at trial, so their preferences were not in evidence. Mr. Bailey provides no legal authority to suggest supervision or other observation of each parent during parenting time is required. We have recognized that GAL work and logistics vary from case to case, and, given the brevity of Mr. Bailey's argument, we decline to impose a particular requirement here. *See Clark v. Alexander*, 953 P.2d 145, 151–55 (Wyo. 1998).

[¶15] Regarding the children's preferences, the law is clear that a child's custody preference, though not conclusive, is a factor to be given serious consideration, particularly when the child has the age and maturity to plainly express that preference. *JR v. TLW*, 2016 WY 45, ¶ 12, 371 P.3d 570, 575 (Wyo. 2016) (citations omitted). If the child's expressed preferences are different than the child's best interests, then the GAL must present both to the court. *Clark*, 953 P.2d at 153–54 (citations omitted). Here, the twins were 16 and the younger child was 13 at the time of trial. The children expressed different preferences to the GAL at various points prior to trial. The GAL presented all of those preferences to the court for its consideration. Neither parent presented evidence to contradict the GAL. The record reflects that counsel for Ms. Larson initially moved for the children to be interviewed by the court, which Mr. Bailey opposed. When counsel later withdrew the motion, Mr. Bailey did not otherwise seek to introduce the children as witnesses. Consequently, this issue was not developed at trial. *Evans v. Sharpe*, 2023 WY 55, ¶¶ 41–42, 530 P.3d 298, 312 (Wyo. 2023) (discussing waiver of issues not presented to the trial court absent plain error). As we concluded in *JR*, Mr. Bailey waived his right to contest the children's preferences when he did not present evidence of those preferences. 2016 WY 45, ¶ 15, 371 P.3d at 576.

[¶16] In sum, the district court provided a detailed analysis for all of the statutory factors, identified the primary caregiver, and acknowledged the children's preferences and GAL recommendations in its Decision Letter. When evaluated against the record, the court's findings and conclusions are supported by the evidence and do not exceed the bounds of reason. The custody order is therefore affirmed.

## II. Child Support

[¶17] Child support orders, including a decision to impute income, are reviewed for an abuse of discretion. *Mecartney*, 2021 WY 141, ¶ 15, 501 P.3d at 202 (quoting *Sears*, 2021 WY 20, ¶ 13, 479 P.3d at 772); *Snowden v. Jaure*, 2021 WY 103, ¶ 11, 495 P.3d 882, 884 (Wyo. 2021) (citing *Marquis v. Marquis*, 2020 WY 141, ¶ 20, 476 P.3d 212, 218 (Wyo. 2020)).

[¶18] Child support is determined by statutorily-prescribed formulas. *Snowden*, 2021 WY 103, ¶ 13, 495 P.3d at 885. Those formulas are dependent on each parent's net monthly income. Wyo. Stat. Ann. § 20-2-304(a); *see also* Wyo. Stat. Ann. § 20-2-303(a) (defining "income"). The child support statutes include express provisions to impute income to unemployed parents. Wyo. Stat. Ann. § 20-2-307(b)(xi) instructs the courts on factors to consider when imputing income:

> In such case the child support shall be computed based upon the potential earning capacity (imputed income) of the unemployed or underemployed parent. In making that determination the court shall consider:
>
> (A) Prior employment experience and history;
>
> (B) Educational level and whether additional education would make the parent more self-sufficient or significantly increase the parent's income;
>
> (C) The presence of children of the marriage in the parent's home and its impact on the earnings of that parent;
>
> (D) Availability of employment for which the parent is qualified;
>
> (E) Prevailing wage rates in the local area;
>
> (F) Special skills or training; and
>
> (G) Whether the parent is realistically able to earn imputed income.

Wyo. Stat. Ann. § 20-2-307(a)(xi); *see also* Wyo. Stat. Ann. § 20-2-303(a)(ii) (defining "gross income" to include the "potential income of parents who are voluntarily unemployed or underemployed").

[¶19] The district court imputed income to Mr. Bailey. Mr. Bailey formerly worked as an engineer with a base annual salary of $120,000. He was laid off in June 2022. A few months later, Mr. Bailey began working as an independent contractor, earning $36,000 in approximately three months, from the end of September to the end of December. He continued that contract work for four months in 2023, earning $42,000. He testified at trial that he could continue to work as an independent contractor but also explained his limited work expectancy based on his age. Mr. Bailey described himself as generally retired. He presented his social security income, including testimony about the estimated increase in social security income if the children resided with him closer to 50 percent of the time. In

6

the financial affidavit he signed and provided to the court a few months prior to trial, Mr. Bailey reported a net monthly income of $4,175.15 for each month he was paid. In his initial disclosures, he estimated annual 2023 income of $62,000.

[¶20] The district court found that "[d]espite [Mr. Bailey's] age and testimony that he is no longer hirable the Court finds [he] is likely able to obtain full-time or contract employment and is not inclined to find that [he] has no income or ability to earn income." The court applied the net monthly income reported by Mr. Bailey, and his self-estimated annual income from his initial disclosures, to calculate his child support obligation. Mr. Bailey characterizes this as imputed income because he was not working at the time of trial, and he asserts that since he was laid off from his former employer, he was not "voluntarily" unemployed and therefore not subject to imputed income.

[¶21] The record explicitly shows Mr. Bailey obtained new employment as an independent contractor <u>after</u> he was laid off. "Voluntary unemployment" in the child support statutes looks to "potential earning capacity" pursuant to Wyo. Stat. Ann. § 20-2-307(b)(xi), not subjective criteria. *Opitz v. Opitz*, 2007 WY 207, ¶ 10, 173 P.3d 405, 408 (Wyo. 2007). The district court did not abuse its discretion in finding Mr. Bailey continued to be capable of work. Nor did the court abuse its discretion when it applied the net income Mr. Bailey self-reported to calculate the presumptive child support obligation. Further, the court expressly provided for anticipated changes in Mr. Bailey's income in its provision for periodic support modifications based on "Father's actual income for any given year." We also note Mr. Bailey has a statutory right to seek future modifications based on other changes in circumstances. Wyo. Stat. Ann. § 20-2-311.

[¶22] Mr. Bailey further asserts the district court applied the wrong child support formula. The child support statutes include a basic formula, Wyo. Stat. Ann. § 20-2-304(a), and, where applicable, a shared custody formula:

> **When each parent keeps the children overnight for more than twenty-five percent (25%) of the year and both parents contribute substantially to the expenses of the children in addition to the payment of child support**, a shared responsibility child support obligation shall be determined by multiplying the parents' total child support obligation as derived from subsection (a) of this section by one hundred fifty percent (150%). After the shared responsibility child support obligation is determined, that amount shall be divided between the parents in proportion to the net income of each. The proportionate share of the total obligation of each parent shall then be multiplied by the percentage of time the children spend with the other parent to determine the theoretical support obligation owed to the other parent. The

7

parent owing the greater amount of child support shall pay the difference between the two (2) amounts as the net child support obligation.

Wyo. Stat. Ann. § 20-2-304(c) (emphasis added). The court applied the basic formula. Mr. Bailey asserts he met the three threshold criteria for the shared custody formula—the percentage of his overnight parenting time, whether he makes "substantial contributions," and whether those contributions are in addition to what he pays in child support. *See Cranston v. Cranston*, 879 P.2d 345, 350–51 (Wyo. 1994) (identifying the three threshold criteria for the shared custody formula).

[¶23] It does not appear from the trial transcript that Mr. Bailey requested child support based on shared custody. He did, however, request a shared custody arrangement at trial so we will consider whether the district court abused its discretion by applying the basic, instead of the shared custody, formula. *Cf. Evans*, 2023 WY 55, ¶ 42, 530 P.3d at 312 (allowing us to review issues not raised at trial in limited circumstances or for plain error). The parties dispute only one of the threshold criteria—whether Mr. Bailey makes "substantial contributions."

[¶24] To determine a "substantial contribution" under Wyo. Stat. Ann. § 20-2-304(c), courts often look to the expenses paid by both parents to see if one parent is paying unusually more of the joint obligations than the other. *See Lee v. Lee*, 2013 WY 76, ¶ 13, 303 P.3d 1128, 1133 (Wyo. 2013); *Fountain v. Mitros*, 968 P.2d 934, 938–39 (Wyo. 1998). This aligns with the intent of the shared custody formula "to encourage both parents' involvement in the financial maintenance of their children." *Cranston*, 879 P.2d at 350. Without the shared custody formula, "a potentially onerous burden would be imposed on one parent. It must be remembered that many expenses of maintaining the children's primary residence, including mortgage or rent, continue unabated during visitation periods with the other parent." *Id.*

[¶25] The parent seeking to apply a shared custody calculation bears the burden to prove their contributions were "substantial." *See id.* at 351. Mr. Bailey's evidence was limited and failed to support his burden of proof. He testified that he contributes to the children during his parenting time by providing food; transporting them to sporting events; buying some shoes and clothes; and paying for two academic test fees, phones, and part of one school trip. Ms. Larson testified about some of the expenses she pays for the children, including all expenses for counseling for the youngest child. Documentary evidence from Mr. Bailey about his expenses for the children does not appear in the record. Given the dearth of evidence presented by Mr. Bailey, and again affording Ms. Larson every favorable inference while omitting evidence Mr. Bailey asks us to reweigh, *Hyatt*, 2023 WY 129, ¶ 48, 540 P.3d at 888, the district court did not abuse its discretion or otherwise err by applying the basic child support formula.

### III. *Property Division*

[¶26]  We review a trial court's division of marital property for an abuse of discretion. *Hyatt*, 2023 WY 129, ¶ 11, 540 P.3d at 880 (citations omitted).  We consider whether the court could reasonably have concluded as it did and, when a party contests the sufficiency of the evidence, we afford "the prevailing party every favorable inference while omitting any consideration of evidence presented by the unsuccessful party." *Snyder v. Snyder*, 2021 WY 115, ¶ 8, 496 P.3d 1255, 1257 (Wyo. 2021) (citing *Bagley v. Bagley*, 2013 WY 126, ¶ 7, 311 P.3d 141, 143 (Wyo. 2013)).  "Property settlements present complex problems requiring district courts to assess the respective merits and needs of the parties." *Ransom v. Ransom*, 2017 WY 132, ¶ 31, 404 P.3d 1187, 1194 (Wyo. 2017) (citing *DeJohn v. DeJohn*, 2005 WY 140, ¶ 11, 121 P.3d 802, 807 (Wyo. 2005)).  We do not disturb a property division in a divorce except on clear grounds, because "the trial court is usually in a better position than the appellate court to judge the parties' needs and the merits of their positions." *Metz v. Metz*, 2003 WY 3, ¶ 6, 61 P.3d 383, 385 (Wyo. 2003) (citations omitted).  An abuse of discretion will be found if the property division shocks the conscience of the Court and appears to be "so unfair and inequitable that reasonable people cannot abide by it." *Hyatt*, 2023 WY 129, ¶ 11, 540 P. 3d at 880 (quoting *Innes v. Innes*, 2021 WY 137, ¶ 127, 500 P.3d 259, 262 (Wyo. 2021)).

[¶27]  Wyo. Stat. Ann. § 20-2-114(a) guides the division of property in a divorce:

> [I]n granting a divorce, the court shall make such disposition of the property of the parties as appears just and equitable, having regard for the respective merits of the parties and the condition in which they will be left by the divorce, the party through whom the property was acquired and the burdens imposed upon the property for the benefit of either party and their children.

The district court need not afford any particular weight between the statutory considerations, and the statute does not require an equal division of property. *Engebretsen v. Engebretsen*, 2022 WY 164, ¶ 24, 522 P.3d 156, 163 (Wyo. 2022); *Morrison v. Rubio*, 2022 WY 26, ¶ 19, 504 P.3d 251, 256 (Wyo. 2022).  Rather, a "just and equitable" division is likely not to be equal. *Engebretsen*, 2022 WY 164, ¶ 24, 522 P.3d at 163 (quoting *Morrison*, 2022 WY 26, ¶ 19, 504 P.3d at 256).  We evaluate whether the division of property is equitable "from the perspective of the overall distribution rather than from a narrow focus on the effects of any particular disposition." *Innes*, 2021 WY 137, ¶ 17, 500 P.3d at 262 (quoting *Stevens v. Stevens*, 2014 WY 23, ¶ 11, 318 P.3d 802, 807 (Wyo. 2014)).

[¶28]  Mr. Bailey contests three aspects of the divided property: (1) the valuation of his gun collection, (2) the valuation of accounts at the date of separation; and (3) whether two properties in South Carolina should have been included in the marital estate.  He also generally contests the district court's evaluation of how he will be left by the divorce.

[¶29]  We begin by evaluating the real property.  There were two parcels of real property in South Carolina: one valued at $27,500 and the other at $71,000.  Limited evidence was presented at trial about either.  Ms. Larson testified based on two documents she extracted from the public tax records in South Carolina.  These reflected Mr. Bailey's ownership and the properties' values and tax history.  Neither property was appraised.  The district court designated that Mr. Bailey should retain title to both properties, but it included the properties' tax valuations when calculating the total value of the marital estate.  Mr. Bailey testified that despite the tax records, the $71,000 property is currently held in probate pending settlement of his mother's estate and not his.  He did not provide corroborating evidence or otherwise rebut the tax records Ms. Larson presented.  Giving every favorable inference to Ms. Larson's testimony and her research into the public tax records, we find no basis to disturb the court's finding that the property was held by Mr. Bailey and therefore subject to division.  *Hyatt*, 2023 WY 129, ¶ 48, 540 P.3d at 888.

[¶30]  Mr. Bailey asserts the $27,500 South Carolina property was a pre-marital asset and not subject to division.  When marital property is divided, the court is required to consider the party through whom the property was acquired.  *Rosendahl v. Rosendahl*, 2011 WY 162, ¶ 10, 267 P.3d 557, 560 (Wyo. 2011).  When property is acquired by one party prior to the marriage, that party is not necessarily entitled to all of that property after the marriage.  *Zaloudek v. Zaloudek*, 2009 WY 140, ¶ 16, 220 P.3d 498, 502–03 (Wyo. 2009) (citations omitted).  Rather, all property is subject to distribution.  *Id.* (citing *Humphrey v. Humphrey*, 2007 WY 72, ¶ 13, 157 P.3d 451, 454 (Wyo. 2007)).  The district court recognized Mr. Bailey brought the real property into the marriage and ruled that he would keep that property.  After hearing testimony from Ms. Larson that taxes were consistently paid on the property during the marriage, it divided the $27,500 value between the parties.  Considering the court skewed the overall property division slightly in Mr. Bailey's favor in part because he brought certain property into the marriage, the division and reasons for it do not shock the conscience or appear "so unfair and unreasonable that reasonable people cannot abide by it."  *Hyatt*, 2023 WY 129, ¶ 11, 540 P.3d at 880 (citation omitted).  Consequently, we will not disturb the inclusion of this parcel in the marital estate or its division as Mr. Bailey requests.

[¶31]  We next consider Mr. Bailey's gun collection.  Ms. Larson provided an inventory of the guns, and she hired an appraiser to value Mr. Bailey's gun collection in 2020 in relation to a previous divorce proceeding that was dismissed.  The appraiser testified to the $46,915 value he assigned to the guns in 2020 and opined that gun values increased since then.  Mr. Bailey testified he thought the appraised value was too high and raised concerns about the accuracy of the inventory.  However, he offered no alternative inventory or

appraisal. The values the district court applied therefore are supported by and consistent with the evidence presented at trial. *Hyatt*, 2023 WY 129, ¶ 48, 540 P.3d at 888.

[¶32] Lastly, we consider the value of other personal property at the time of separation. Mr. Bailey asserts that Ms. Larson's separate accounts were undervalued and do not match the amounts in her initial disclosures. According to Mr. Bailey, the difference in value between the date of separation and the date of trial is $74,244.50 which should warrant a recalculation of the total marital estate. He also asserts some of his separate accounts were premarital, should not have been included in the marital estate, and were overvalued by $303,238.24. Mr. Bailey relies in part on both parties' initial disclosures. For other accounts, Mr. Bailey fails to identify evidence to support his claimed valuation. Only some of the trial exhibits were designated in the appellate record. It appears Mr. Bailey would have us recalculate the marital estate's value with limited supporting documentation. The governing standard by which we review this matter prevents us from doing so. *Hyatt*, 2023 WY 129, ¶ 11, 540 P.3d at 880.

[¶33] The district court calculated the value of all property as approximately $2.2 million. It considered the position Mr. Bailey would be left in after the divorce and divided the estate slightly in Mr. Bailey's favor because Ms. Larson is younger and able to work longer than Mr. Bailey, and because Mr. Bailey brought some of the assets into the marriage. The evidence Ms. Larson presented, and all reasonable inferences to be drawn from that evidence, support the court's findings, and nothing about the court's property division was so unfair, inequitable, or unreasonable as to shock our conscience. Mr. Bailey's property division claims therefore fail.

### IV. Attorneys' Fees

[¶34] Ms. Larson asks us to dismiss this appeal and award attorneys' fees to her, asserting Mr. Bailey violated our appellate rules. We first consider Ms. Larson's assertion that Mr. Bailey violated W.R.A.P. 1.03 and 7.06 by not serving the GAL a copy of this appeal. Rule 7.06(b)(1) requires service of appellate briefs "on each party," and Rule 1.03 provides for a variety of sanctions, including dismissal, if a party does not follow our rules. Ms. Larson asserts the GAL must be served as the representative of the parties' three children.

[¶35] Children are not parties in their parents' divorce. In a domestic relations case, the GAL is an "agent or arm of the court," appointed to advocate for the best interest of the child, not as an attorney for a child. [2] *Lemus v. Martinez*, 2021 WY 66, ¶¶ 22–30, 486 P.3d

---

[2] Ms. Larson invites us to look at a termination of parental rights case, *In re DS*, 607 P.2d 911, 914–15 (Wyo. 1980), to support her position that the GAL must be served in a domestic relations case. We decline to do so, noting that termination of parental rights and domestic relations cases are governed by different law.

1000, 1008–11 (discussing *Clark*, 953 P.2d 145, and subsequent jurisprudence). Thus, the GAL is not counsel for a "party," and W.R.A.P. 7.06 does not apply.

[¶36] W.R.A.P. 7.13, however, provides that a GAL appointed by the district court "may participate in any appeal involving the matter for which the GAL has been appointed." It would be difficult for the GAL to decide whether to participate if they are not served with the notice of appeal and appellant's brief. District courts often order the parties to serve all pleadings on the GAL and require the GAL to participate in the case until all custody matters are finally adjudicated. The order appointing the GAL in this case does not include those provisions. As such, even though service of the notice of appeal and briefs on the GAL is the better practice, failure to serve the GAL in this case does not mandate dismissal.[3]

[¶37] Ms. Larson also requests attorneys' fees pursuant to W.R.A.P. 10.05, asserting Mr. Bailey failed to provide cogent argument or legal authority in his appellate briefing. Mr. Bailey's briefing is not so devoid of legal authority, argument, or citation to the record that attorneys' fees are warranted as a sanction. Ms. Larson's request for fees on this basis is denied.

## *CONCLUSION*

[¶38] We affirm the decision of the district court on all issues in this appeal, finding no abuse of discretion. We deny Ms. Larson's request for dismissal and attorneys' fees.

---

[3] The record reflects that the GAL had notice of this appeal through other means, having been served copies of certain post-judgment filings related to a request for stay pending appeal. The GAL also stayed in contact with Mr. Bailey's counsel after entry of the Decree in relation to unpaid GAL fees.

12