# IN THE SUPREME COURT, STATE OF WYOMING

# 2026 WY 28

### OCTOBER TERM, A.D. 2025

**February 26, 2026**

CAMERON ALLEN,

Appellant
(Plaintiff),

v.                                                                S-25-0183

LISA ALLEN,

Appellee
(Defendant).

*Appeal from the District Court of Natrona County*
The Honorable Catherine E. Wilking, Judge

*Representing Appellant:*
Abigail E. Fournier, Matthew R. Misslin of Steiner, Fournier, Zook & Case, LLC, Cheyenne, Wyoming.

*Representing Appellee:*
Stacy E. Casper, Casper Law Office, LLC, Casper, Wyoming.

*Before BOOMGAARDEN, C.J., GRAY, FENN, JAROSH, and HILL, JJ.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.**

**JAROSH, Justice.**

[¶1]    Cameron Allen (Husband) and Lisa Allen (Wife) married in 1989 and divorced in 2025.  Following a bench trial, the district court divided the marital property and ordered Husband to make an $850,000 equalization payment to Wife.  Husband appeals, asserting the district court abused its discretion in valuing certain assets and by ordering an excessive equalization payment.  We affirm.

## ISSUES

[¶2]    Husband presents two issues for review which we consolidate and rephrase as:

> Did the district court abuse its discretion in its distribution of marital property pursuant to Wyo. Stat. Ann. § 20-2-114(a)?

## FACTS AND PROCEEDINGS

[¶3]    Husband filed for divorce on November 3, 2023, after thirty-four years of marriage to Wife.  The couple share two adult daughters and a son who passed away in 2014.  Accordingly, Husband only sought the dissolution of the marriage and division of the marital estate.

### The Marital Estate

[¶4]    Husband and Wife married in 1989.  In 2013 and 2014, Husband built the couple's marital home — a 2,800 square foot custom home situated on twenty-six acres outside of Casper.  The marital home includes fences for livestock, a large barn, and other improvements the couple made while owning the home.

[¶5]    A year before their separation, Husband and Wife purchased property in Alaska for $20,000.  The plot is largely undeveloped but for Husband's efforts to construct a road and remove vegetation.  Husband's improvements cost approximately $27,000 and were made while the divorce petition was pending.

[¶6]    At the time of separation, the marital estate also included six vehicles, three campers, two tractors with implements, snowmobiles, side-by-sides, an ATV, and an assortment of trailers.  Husband and Wife also identified a variety of fixtures, furniture, artwork, and other personal property for division.

[¶7]    Husband and Wife each hold individual retirement accounts. Husband sells medical devices both as an employee and independent contractor.  He has a 401(k) account, stock options, and multiple investment accounts.  Wife previously worked as a teacher and currently serves as an educational administrator.  She holds a pension with the State of

1

Utah from her first teaching experience and a State of Wyoming pension with her current employer. Wife also has a 457 deferred compensation retirement account.

**Trial**

[¶8]    The bench trial commenced on March 10, 2025. Husband stated the value of the marital home and the value of Wife's pensions were the two material issues before the district court. Husband testified that he wanted to be awarded the marital home because he had used a significant portion of his retirement and stock options to build and maintain the house. As a result, he considered the house his retirement (i.e., he could finance his retirement by selling the house).

[¶9]    One of Husband's witnesses was Ms. Janci Baxter, a certified public accountant, who provided expert testimony on the value of Wife's pensions. Ms. Baxter estimated the overall value and monthly benefit for Wife's State of Utah and State of Wyoming pensions. She testified that based upon the present value method, those accounts were worth $737,000 at the time of separation and $765,957 on the date of trial.

[¶10]  Wife testified that the balance of her pensions was a combined $291,720.53 as of the date of trial. One of Wife's witnesses was Cynthia Whitlock, a certified residential appraiser. Wife engaged Ms. Whitlock, an acquaintance from church, to conduct an appraisal of the marital home around the time of Husband and Wife's separation. Ms. Whitlock conducted her first appraisal in January 2024 and valued the home at $1,044,000. At that time, Ms. Whitlock only identified five comparable properties ranging from four to eighteen acres in size.

[¶11]  Ms. Whitlock testified she was asked to appraise the property again in January 2025 and appraised the marital home at $1,541,000. When asked why the value increased between appraisals, Ms. Whitlock stated that the Casper market was appreciating, the 2024 appraisal used incorrect sales prices for two comparable properties, and the 2025 appraisal included comparable land sale properties more like the twenty-six acres occupied by the marital home.

[¶12]  Ms. Tricia Lichty, a local real estate agent, also testified. She compared two market analyses she did on the marital home in 2023 and 2025, the latter of which resulted in a market value of $1,666,833.

[¶13]  In his closing, Husband asked the district court to value the marital home consistent with the January 2024 appraisal and to award Wife her pension and retirement accounts, valuing them in accordance with Ms. Baxter's testimony. He also asked the court to award him the marital home and "if the Court determined that there should be an equalization payment" he have sixty days to comply because "that would be equitable under these circumstances." Wife asked the district court to consider that Husband has substantially

2

higher earning power and for the division to reflect that disparity. The bench trial concluded on March 11, 2025.

**Divorce Decree**

[¶14] The district court issued its oral ruling on April 8, 2025, and divided the property as the parties generally had requested. The court also awarded Wife an $850,000 equalization payment and gave Husband ninety days to complete the transaction. The district court entered the written decree on May 19, 2025. Husband was awarded the marital home and the Alaska property, and any debts associated with those properties. The district court also awarded Husband four vehicles, three campers, two tractors and implements, two snowmobiles, two side-by-sides, an ATV, multiple trailers, and nearly all the fixtures associated with the marital home. Wife was awarded two vehicles, some furniture, three pieces of art, and clothing. Finally, the district court divided the party's joint bank accounts and awarded each their own respective retirement accounts. Importantly, neither party requested special findings of fact under W.R.C.P. 52(a)(1)(A), nor did the district court make any. Husband appealed.

## STANDARD OF REVIEW

[¶15] We review a trial court's division of marital property for an abuse of discretion. *Bailey v. Bailey*, 2024 WY 65, ¶ 26, 550 P.3d 537, 547 (Wyo. 2024) (citing *Hyatt v. Hyatt*, 2023 WY 129, ¶ 11, 540 P.3d 873, 880 (Wyo. 2023)). We consider whether the court could reasonably have concluded as it did and, when a party contests the sufficiency of the evidence, we afford "the prevailing party every favorable inference while omitting any consideration of evidence presented by the unsuccessful party." *Id.* (citing *Snyder v. Snyder*, 2021 WY 115, ¶ 8, 496 P.3d 1255, 1257 (Wyo. 2021) (citations omitted)). "Property settlements present complex problems requiring district courts to assess the respective merits and needs of the parties." *Ransom v. Ransom*, 2017 WY 132, ¶ 31, 404 P.3d 1187, 1194 (Wyo. 2017) (citing *DeJohn v. DeJohn*, 2005 WY 140, ¶ 11, 121 P.3d 802, 807 (Wyo. 2005)). We do not disturb a property division in a divorce except on clear grounds, because "the trial court is usually in a better position than the appellate court to judge the parties' needs and the merits of their positions." *Metz v. Metz*, 2003 WY 3, ¶ 6, 61 P.3d 383, 385 (Wyo. 2003) (citations omitted). An abuse of discretion will be found if the property division shocks the conscience of the Court and appears to be "so unfair and inequitable that reasonable people cannot abide it." *Hyatt*, ¶ 11, 540 P.3d at 880 (quoting *Innes v. Innes*, 2021 WY 137, ¶ 16, 500 P.3d 259, 262 (Wyo. 2021)).

## DISCUSSION

[¶16] Husband challenges the district court's division of the marital estate. First, Husband alleges the district court improperly valued the parties' marital home and Wife's pension accounts. Second, he alleges that an $850,000 equalization payment was an abuse of

discretion and resulted in a distribution of marital assets that should shock the conscience of this Court.

[¶17]   The disposition of property in a divorce is governed by Wyoming statute:

> [I]n granting a divorce, the court shall make such disposition of the property of the parties as appears just and equitable, having regard for the respective merits of the parties and the condition in which they will be left by the divorce, the party through whom the property was acquired and the burdens imposed upon the property for the benefit of either party and children.

Wyo. Stat. Ann. § 20-2-114(a) (2025).   The district court has discretion to decide what weight to give each factor.  *Innes*, ¶ 15, 500 P.3d at 262 (citation omitted).   Additionally, the statute does not require an equal division of the property.  *Bailey*, ¶ 27, 550 P.3d at 547 (citing *Engebretsen v. Engebretsen*, 2022 WY 164, ¶ 24, 522 P.3d 156, 163 (Wyo. 2022)). In fact, a just and equitable division is as likely as not to be unequal.  *Bloedow v. Maes-Bloedow*, 2024 WY 115, ¶ 17, 558 P.3d 576, 582-83 (Wyo. 2024) (citations omitted).

## I.    The district court was not required to make written findings of fact.

[¶18]   Husband disputes the valuation of the marital home and Wife's pension accounts but also suggests the district court erred when it did not assign a value to either asset.  As Husband acknowledges, "[i]t is unclear exactly what value the district court assigned to the marital home," although he presumes the district court relied on the 2025 appraisal.  He also presumes the district court accepted testimony Wife presented about the value of her pensions, as opposed to his expert's testimony, based on the amount of the equalization payment awarded to Wife.

[¶19]   Neither party requested that the district court make special findings of fact under W.R.C.P. 52(a)(1)(A).  When no such request is made, "it shall not be necessary for the court to state its findings, except generally for the plaintiff or the defendant."  *Morrison v. Hinson-Morrison*, 2024 WY 96, ¶ 20, 555 P.3d 944, 953 (Wyo. 2024) (citing W.R.C.P. 52(a)(1)(A)).

[¶20]   This Court does not know how the marital home or Wife's pensions were valued by the district court.  But we cannot fault the district court because the parties did not request special findings of fact.  "In the absence of special findings of fact, this Court must consider that the trial court's judgment carries with it every finding of fact to support that judgment." *Morrison*, ¶ 20, 555 P.3d at 953 (citing *Barney v. Barney*, 705 P.2d 342, 345 (Wyo. 1985)). So here, we must consider that the district court's decree carries with it every finding of

4

fact to support the distribution of property, including the value of the marital home and Wife's pensions.

## II.    The district court did not abuse its discretion in dividing the marital estate.

[¶21]  Husband presumes that the district court valued the marital home at $1,541,000 based on the 2025 appraisal.  Husband also presumes the court valued Wife's pension accounts consistent with Wife's testimony, not Husband's expert's testimony.  Husband then asserts such valuations were not reasonable based on the evidence.[1]  Consequently, Husband maintains the district court disregarded the division statute and abused its discretion when it awarded Wife an $850,000 equalization payment.

### A.    Assuming the district court valued the marital home as Husband alleges, the evidence presented reasonably supports the valuation.

[¶22]  Husband asserts that the district court overlooked inconsistencies in the 2025 appraisal and that the weight of the evidence presented at trial indicates the marital home is actually worth $1,044,000 as documented in the 2024 appraisal, not $1,541,000 as documented in the 2025 appraisal.  As discussed above, this Court can only presume for purposes of Husband's argument that the district court relied on the 2025 appraisal because the parties did not request Rule 52 special findings of fact.

[¶23]  Under the applicable standard of review, the Court does not reweigh the evidence presented at trial; instead, we consider whether the district court could reasonably have concluded as it did.  *Bailey*, ¶ 26, 550 P.3d at 547; *see also Metz*, ¶ 6, 61 P.3d at 385 (recognizing the Court does not disturb a property division in a divorce except on clear grounds, because "the trial court is usually in a better position than the appellate court to judge the parties' needs and the merits of their positions.").  And in doing so, we must also afford Wife every favorable inference.  *See id.* (recognizing we afford "the prevailing party every favorable inference while omitting any consideration of evidence presented by the unsuccessful party.") (quoting *Snyder*, ¶ 26, 496 P.3d at 1261).

[¶24]  At trial, both parties relied on differing appraisals Ms. Whitlock prepared for the marital home.  The initial appraisal Ms. Whitlock prepared valued the marital home at $1,044,000 in January 2024.  A year later, Ms. Whitlock appraised the home at $1,541,000. The marital estate occupies twenty-six acres.  Ms. Whitlock's 2024 appraisal included six comparable property sales which ranged from four to twenty acres.  During trial, Ms. Whitlock testified that when she conducted the 2024 appraisal, she lacked comparable properties with similar acreage.  She explained during the 2025 appraisal "the land value

---

[1] Husband essentially contends that a lower house valuation and a higher valuation of Wife's pension accounts should have resulted in a different distribution of the marital estate.

5

came up a lot because I had a much better, more recent land sale that was definitely more credible."

[¶25] Husband claims Ms. Whitlock did not justify the substantial increase in the appraised value between 2024 and 2025. We disagree. Ms. Whitlock testified to the methodology used to support her conclusion that Casper was in an appreciating market:

> For one thing, a year has passed and we have an appreciating market. I know this because of the studies that my office does. We do an ongoing paired sales analysis in which we take two sales, one that sold maybe two years ago and one that resold recently, we compare them, and we come up with the difference in the values between the first sale and the second sale. When you have enough of those, then you can kind of average it and get an average appreciate [sic], right, for the - - for the Casper market.

[¶26] Ms. Whitlock also explained that the 2024 appraisal mistakenly included older comparables which were corrected in the 2025 appraisal. While Ms. Whitlock noted federal housing studies only indicated a seven percent increase in housing prices, she stated the combination of factors discussed — updated comparable properties with similar acreage, corrected mistakes, and an appreciating local market — explained the substantial increase in the appraised value in the marital home over the course of one year.

[¶27] Finally, Ms. Lichty, a local real estate agent, testified about her January 2025 market analyses of the marital home, wherein she assigned the home a market value of $1,666,833.00.

[¶28] Applying our standard of review, as we must, we give Wife every favorable inference related to this evidence and omit from our consideration Husband's evidence. When we do so, we find the district court could have reasonably concluded the value of the marital home was $1,541,000, consistent with Ms. Whitlock's 2025 appraisal. It was also well within the district court's discretion to rely upon the 2025 appraisal, performed closer to the trial date, as opposed to the 2024 appraisal, performed closer to the date of separation. *Wallop v. Wallop*, 2004 WY 46, ¶ 12, 88 P.3d 1022, 1026-1027 (Wyo. 2024) (finding the district court has broad discretion in terms of the appropriate date for valuing marital assets). Thus, if the district court indeed valued the marital home as Husband alleges, it did not abuse its discretion in doing so.

> **B.** **Assuming the district court valued Wife's pension accounts as Husband alleges, the evidence presented reasonably supports the valuation.**

6

[¶29] Husband also questions the sufficiency of the evidence presented regarding the value of Wife's pensions. His expert witness, Ms. Baxter, provided testimony on the estimated value of Wife's pension accounts from the States of Utah and Wyoming. Wife testified to the values of her accounts based upon their then-current balances. Husband does not dispute Wife's testimony but argues that the district court should have accepted his expert's testimony on the value of the accounts, not Wife's testimony. Just as with the home valuation, we do not know the value the district court assigned to the accounts.

[¶30] Even if we assume the district court did in fact accept Wife's testimony as establishing the value of her pension accounts, it was not error for it to do so. Again, Husband asks the Court to reweigh the evidence presented at trial. But our standard of review does not permit the Court to reweigh the evidence or to revisit the credibility of witnesses. *See Bishop v. Bishop*, 2017 WY 130, ¶ 28, 404 P.3d 1170, 1178 (Wyo. 2017) (stating the district court has "the duty to weigh the evidence, including any expert testimony, and determine the credibility of the witnesses' statements and opinions"); *see also Morrison v. Rubio*, 2022 WY 26, ¶ 17, 504 P.3d 251, 255 (Wyo. 2022) (same). Instead, we examine whether the district court could reasonably have concluded as it did with the evidence that was presented. *Bailey*, ¶ 26, 550 P.3d at 547. While Ms. Baxter testified to the value of Wife's pension accounts using the present value methodology, the district court was free to disregard that testimony in favor of Wife's uncontested testimony about the value of her deferred compensation account. More importantly, on review we are required to give Wife every favorable inference while omitting consideration of Husband's evidence.

[¶31] Even if the district court accepted Wife's testimony as to the value of her pension accounts as opposed to Ms. Baxter's, the court reasonably could have concluded as it did and, therefore, did not abuse its discretion.

### C. The district court had regard for the factors in Wyo. Stat. Ann. § 20-2-114(a).

[¶32] Husband asserts the district court's distribution of the marital estate was inconsistent with Wyo. Stat. Ann. § 20-2-114(a)

[¶33] Because neither party requested special findings of fact, the district court was only required to have "regard" for the statutory factors when it divided the marital property rather than expressly considering each factor. *Vassilopoulos v. Vassilopoulos*, 2024 WY 87, ¶ 22, 557 P.3d 725, 732 (Wyo. 2024) (citing Wyo. Stat. Ann. § 20-2-114(a)). Our case law does not mandate any concrete rules governing how the district court should analyze the factors. *Id*. That is, "[t]here are no specific guidelines as to the weight the district court must afford the statutory considerations when making a property division." *Morrison*, ¶ 18, 504 P.3d at 255 (quoting *Innes*, ¶ 15, 500 P.3d at 262).

7

[¶34] Husband cannot credibly claim the district court failed to give "regard" to the factors in Wyo. Stat. Ann. § 20-2-114(a). In its oral ruling, the district court expressly identified some of the statutory factors it considered and noted its list "is not an exhaustive list." The significant length of the marriage, the condition the parties will be left in after the divorce, and the fact Husband "has historically had and will continue to have a substantially higher income" than Wife were factors that primarily influenced the district court's division, as it explained in its oral ruling. In addition, the distribution itself demonstrates that the court had regard for the statutory factors. The district court awarded Husband the marital home, which he testified he wanted to keep because of all the money he put into building it. It also awarded him most of the remaining real and personal property. Considering the distribution to Husband and Husband's higher income, the district court then ordered him to make an equalization payment to Wife. These things demonstrate the court's consideration of respective merits of the parties and the condition each party will be left in after the divorce. The district court did not abuse its discretion by failing to have regard for the statutory factors for distributing the marital estate.

> ### D.     The division of the marital estate does not shock the conscience of this Court.

[¶35] Finally, Husband maintains the district court's award of an $850,000 equalization payment to Wife results in a distribution that shocks the conscience and is so unfair and inequitable that reasonable persons cannot abide by the decree. His argument is based in part on the errors he alleges the district court made regarding the value of the marital home and Wife's pension accounts. Once again, Husband is plagued by the circumstance where neither party requested Rule 52 special findings of fact. *See Morrison*, ¶ 20, 555 P.3d at 953 (stating we "must consider that the trial court's judgment carries with it every finding of fact to support that judgment.").

[¶36] Claiming the district court gave too much "deference" to Wife in dividing the marital estate, Husband asks this Court to reweigh the evidence contrary to our standard of review. *See Amadio v. Amadio*, 2025 WY 21, ¶ 42, 564 P.3d 259, 271 (Wyo. 2025) (dismissing argument that suggested the statutory factors and evidence favored his preferred division of property in the absence of special findings). We need not consider Husband's contention that the district court conducted "haphazard valuations" of personal items when it did not, nor was it required to assign a particular value to any such items.

[¶37] Husband's challenge to the equalization payment fails on similar grounds. A court abuses its discretion when "the property disposition shocks the conscience of this Court and appears to be so unfair and inequitable that reasonable people cannot abide it." *Morrison*, ¶ 16, 504 P.3d at 255 (citations and internal quotations omitted). When determining whether a property distribution is equitable, we consider it "from the perspective of the overall distribution of marital assets and liabilities rather than from a

8

narrow focus on the effects of any particular disposition." *Begley v. Begley*, 2020 WY 77, ¶ 22, 466 P.3d 276, 283 (Wyo. 2020) (citation omitted).

[¶38]  Importantly, Husband asked the district court to award him the marital residence, provide Wife with her pensions, and split the remaining personal property.  The district court did just that while also rejecting Wife's request for alimony, and to make up the difference, awarded Wife the equalization payment.  In addition to an undeveloped property in Alaska, the district court awarded the bulk of the couple's remaining personal property to Husband — four vehicles, three camper trailers, two tractors with implements, side-by-sides, snowmobiles, trailers, furniture, and home fixtures.  The equalization payment awarded to Wife was not just tied to the value of the marital house. The equalization payment was also tied to the distribution of other real and personal property, as well as to the fact that Husband would continue to have a substantially higher income than Wife.

[¶39]  The overall distribution of the marital estate, including the $850,000 equalization payment, does not shock the conscience of the Court.  *See Innes*, ¶¶ 24-25, 500 P.3d at 264 (finding the district court did not abuse its discretion in dividing the entire marital estate after applying the factors in Wyo. Stat. Ann. § 20-2-114(a)).  To the contrary, it appears to be a deliberate, reasonable distribution of the marital assets and liabilities.

## CONCLUSION

[¶40]  In the absence of a request for special findings of fact under W.R.C.P. 52(a)(1)(A), the district court was not required to make any additional written findings with respect to the value of the marital home or Wife's pension accounts.  Nonetheless, the parties presented sufficient evidence at trial for the district court to divide the marital estate as it did in the decree.  Finally, the district court did not abuse its discretion in its division of the marital estate, including in its award to Wife of an $850,000 equalization payment.

[¶41]  Affirmed.